COPY

1  Nathaniel L. Dilger (Bar No. 196203)
   ndilger@onellp.com
2  Peter R. Afrasiabi, Esq. (Bar No. 193336)
   pafrasiabi@onellp.com
3  **ONE LLP**
   4000 MacArthur Blvd.
4  West Tower, Suite 1100
   Newport Beach, CA 92660
5  Phone: (949) 502-2870

6  *Attorneys for Plaintiffs,*
   *Social Sampling, Inc.; Mass Connections, Inc; et al.*

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2012 SEP 18  PM 3:56

FILED By Fax

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SACV12 - 01576 CJC (ANx)

| | |
|---|---|
| Social Sampling, Inc. and Mass Connections, Inc., | Case No. |
| Plaintiffs, | **COMPLAINT FOR PATENT INFRINGEMENT PERMANENT INJUNCTION AND DAMAGES** |
| v. | |
| Crossmark, Inc.; Shopper Events, LLC; and Does 1-5, inclusive, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

For its Complaint against Crossmark ("Crossmark"), Shopper Events, LLC ("Shopper Events"), and DOES 1-5, collectively referred to as "Defendants" or "Crossmark," Plaintiffs Social Sampling, Inc. ("Social Sampling"), and Mass Connections, Inc. ("MC"), collectively referred to as "Plaintiffs" or "Mass Connections" hereby allege as follows:

### THE PARTIES

1.  Plaintiff Mass Connections, Inc. ("Mass Connections") is a corporation duly organized and existing under the laws of California with its principal place of business at P.O. Box 684, Sunset Beach, CA 90742.

20986.1

COMPLAINT

2. Mass Connections was principally engaged in services for managing and implementing in-store promotions, such as are commonly found at large department stores (e.g., Walmart, Target, Kmart) and grocery stores. An example of such an in-store promotion would be a demonstration of a high-end coffee maker. This demonstration might take place - for example - in a Target store.

3. Mass Connections would provide staffing for the demonstration of the coffee makers and would carefully collect and organize the data resulting from the demonstration. This data could include - for example - information confirming that the demonstration in fact took place (including when and for how long the demonstration lasted), information on what products were purchased/used by the demonstration staff, as well as information on whether the demonstration resulted in an increase in sales for the coffee maker being demonstrated. Mass Connections would gather, process and deliver all this data to the customer (in this example, Target) for use in tracking/understanding product sales.

4. Mass Connections' programs encompassed national product rollouts, re-launches, or promotional events. Mass Connections has developed promotional events for consumer products and retail companies such as Kraft, Procter & Gamble, Kroger and Target. It traced its roots back to 1976, when founder and CEO Caroline Cotten launched, what was at the time, a staffing agency.

5. Plaintiff Social Sampling, Inc. ("Social Sampling") is a corporation duly organized and existing under the laws of California with its principal place of business at 11838 Western Avenue, Stanton, CA 90680. Social Sampling is the exclusive licensee to U.S. Patent Nos. 7,444,305 ("The '305 Patent") and 7,797,191 ("The '191 Patent"). Mass Connections and Social Sampling are hereinafter collectively referred to as either "Mass Connections" or "Plaintiffs."

6. As alleged below, Plaintiffs are collectively the owner of all right, title, and interest in the '305 Patent and the '191 Patent.

7. Defendant Crossmark, Inc. is a corporation existing under the laws of Delaware, with its principal place of business at 5100 Legacy Drive, Plano, Texas, 75024.

Defendant Shopper Events, LLC ("Shopper Events") is a corporation also having its principal place of business at 5100 Legacy Drive, Plano, Texas, 75024. On information and belief, Shopper Events was formed by and is wholly controlled by Defendant Crossmark.

8. Various others, presently unknown to plaintiff, participated as co-conspirators with defendants Crossmark and Shopper Events in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof. DOES 1-5 are individuals and/or business entities and participated in the activity which is the subject of this action, as alleged in this Complaint. Plaintiff does not at this time know the true names and capacities of the DOES 1-5 and therefore sues them under fictitious names. Plaintiff will request permission to amend this Complaint to state the true names and capacities of these fictitiously named defendants when they ascertain them. Plaintiff is informed and believe, and allege on this ground, that these fictitiously named defendants are legally responsible in some manner for the acts and omissions set forth below, and therefore are liable to them for the relief requested.

9. Defendants Crossmark, Shopper Events, and DOES 1-5 are collectively referred to herein as "Crossmark" or "Defendants."

## JURISDICTION AND VENUE

10. This is a civil action for patent infringement arising under the Patent Act of the United States, 35 U.S.C. §§ 101 et seq. This court has subject matter jurisdiction of such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) in that the acts and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of California and within this district, among other places. Crossmark, Inc. resides in this judicial district by virtue of its business activities in this district and has committed acts of infringement in this judicial district.

## U.S. PATENT NO. 7,797,191

12. On September 14, 2010, the United States Patent & Trademark Office duly and legally issued United States Letters Patent No. 7,797,191 ("the '191 Patent"), entitled "Promotional Event Tracking System." The '191 Patent is attached as **Exhibit A** to this Complaint and is incorporated by reference in its entirety.

13. By way of example only, the '191 patent describes, among other things, a system for coordinating and tracking product and service demonstrations. Within this system, an Event Coordinator directs Event Operators to conduct a product or service event where the Event Coordinator provides Event Operator with various types of cards (e.g., a credit card or debit card) to purchase items needed for a demonstration. The Event Operator contacts a the card administration system to - among other things - activate the card, verify that the provided card ID and the event ID match and, authorize a budget for the card. The Event Operator is then permitted to purchase items with the card and conduct the planned product or service demonstration. Event data from the demonstration can then be provided to those involved in the demonstration (product manufacturer, service providers, etc.), the Event Coordinator, the Event Operator, a staffing agency, and a retail store. The described system is used to - among other things, obtain event data, including comparison of items purchased using the card and items purchased by customers.

## U.S. PATENT NO. 7,444,305

14. On October 28, 2008, the United States Patent & Trademark Office duly and legally issued United States Letters Patent No. 7,444,305 ("the '305 Patent"), entitled "Methods of Coordinating Products and Service Demonstrations." The '305 Patent is attached as **Exhibit B** to this Complaint and is incorporated by reference in its entirety.

15. By way of example only, the '305 patent describes, among other things, methods for coordinating products and service demonstrations. Similar to the claims in the '191 Patent, an Event Coordinator directs Event Operators to conduct product and service demonstrations, and provides the Event Operators with cards to purchase demonstration items. The Event Operator contacts the card administration system to - among other things

1  - activate the card, verify that the card ID and event ID match and are valid, and authorize a
2  budget for the demonstration event with the card. The Event Operator then purchases items
3  with the card and conducts demonstrations. Event data from the demonstration can then be
4  provided to those involved in the demonstration (product manufacturer, service providers,
5  etc.), the Event Coordinator, the Event Operator, a staffing agency, and a retail store. The
6  described system is used to - among other things, obtain event data, including comparison
7  of items purchased using the card and items purchased by customers

## THE CROSSMARK/MASS CONNECTIONS
## NON-DISCLOSURE AGREEMENT

16. On or about early 2006, Crossmark's President - Joe Crafton - approached Mass Connection's CEO - Caroline Cotten, and proposed a business deal between the two companies.  At that time, Crossmark did not conduct in-store demonstrations of the type pioneered by Mass Connections.  As a result, the two companies were not in competition, but were indeed potentially complementary in terms of their respective capabilities.  Mr. Crafton proposed an alliance between the two companies wherein Mass Connections and Crossmark would cross-sell each other's expertise to expand both parties' market reach, i.e., the proverbial "win-win" situation.

17. On information and belief, Crossmark had - unbeknownst to Plaintiffs - no interest in entering into the partnership it had proposed.  It was instead Crossmark's intention - under the guise of creating an " alliance" - to either engineer the outright purchase of Mass Connections or, failing that, to gather as much information as it could regarding Mass Connections' proprietary and patented technology so as to allow Crossmark to unfairly compete with Mass Connections.  Unfortunately for Mass Connections, Mr. Crafton and Crossmark cunningly hid their true intentions until it was too late.

18. Given that Crossmark and Mass Connections were indeed not competitors (at least not then), Mass Connections was certainly interested in exploring the partnership Joe Crafton had proposed.  For this reason, Mass Connections readily agreed in early 2006 to have Joe Crafton visit Mass Connections' Southern California facilities.  This visit seemed

to Mass Connections like a logical first step to exploring a possible partnership between the parties. But little did Mass Connections know that Mr. Crafton intended to use this trip to instead learn everything he could about Mass Connections' business, its methodologies, and - most importantly - how Mass Connections actually implemented the system and methodologies described and patented in the '191 and '305 patents.

19. While unaware of Crossmark's true intentions, Mass Connections was not foolish. So coincident with Mr. Crafton's visit to Mass Connections in early 2006, Mass Connections insisted on the execution of a February 23, 2006 Non-Disclosure / Confidentiality Agreement ("the NDA"). The NDA is attached as **Exhibit C** to this Complaint and is incorporated by reference in its entirety.

20. The NDA provided - among other things - that neither party would disclose or otherwise use the confidential or proprietary information of the disclosing party, save for the sole and exclusive purpose of exploring the proposed partnership between the parties or as otherwise permitted by the disclosing party.

21. Shortly after Mr. Crafton's visit to Mass Connections' facility, Ms. Cotten travelled to Dallas to tour Crossmark's facility there. During this second visit, Crossmark continued to mask their true intentions. During this meeting, Mr. Crafton went so far as to indicate that Ms. Cotten would be added as Crossmark's first female board member.

22. After hosting Ms. Cotten in Dallas, Mr. Crafton returned for a second visit to Mass Connections' Southern California facilities. During this second visit by Mr. Crafton, he obtained additional confidential information from Mass Connections regarding its services, including information regarding Mass Connections' contacts within its various customers, including Walmart. But at the end of this visit with Mass Connections, Mr. Crafton revealed that Crossmark's goal was not a partnership with Mass Connections, but was instead the outright purchase of Mass Connections. Not surprisingly, Ms. Cotten and Mass Connections were not only greatly surprised by this revelation, but also not very interested in Crossmark's new proposal.

23. But after Ms. Cotten declined Mr. Crafton's proposal, the entire tenor of the conversations between the two companies changed. After hearing that Mass Connections was not for sale, Mr. Crafton abruptly cut off all communications with Mass Connections.

24. Mass Connections heard nothing further from Mr. Crafton and Crossmark for nearly two years and had no indication that Crossmark was acting in violation of the parties' NDA. But in approximately November of 2008, Crossmark's true intentions were revealed. Specifically, Mass Connections learned that - unable to purchase Mass Connections - Crossmark and Mr. Crafton had been busily and secretly setting up a new business unit for the sole purpose of competing directly with Mass Connections. Mass Connections learned this information when Mass Connections employees attended a roll-out presentation for "Shopper Events, LLC," which was the name of the new business unit Crossmark had created. Upon seeing this presentation, it was clear to Mass Connections not only that Shopper Events was not only a copy-cat of Mass Connections' services, but that Crossmark had - in violation of the NDA - misused Mass Connections' confidential information to form and launch this competing company.

25. Mass Connections also was startled to learn that not only had Crossmark used Mass Connections confidential information to launch Crossmark's competing "Shopper Events" service, but that its first customer was none other than the retail mega-giant, Walmart. This was a crippling blow to Mass Connections. As Crossmark well knew from its confidential conversations with Mass Connections, Walmart was one of Mass Connections' largest and most important clients.

## FIRST CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS FOR DIRECT, CONTRIBUTORY AND INDUCING INFRINGEMENT OF U.S. PATENT NO. 7,797,191

26. Plaintiff incorporates herein by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

27. A true and correct copy of the '191 Patent is attached as Exhibit A and incorporated herein by reference. Defendant Crossmark uses, sells, and/or provides

systems and methods for conducting product and service demonstrations to its clients as it aims to service their marketing needs. By doing so Crossmark generates significant revenue from its customers on a regular basis.

28. By using, implementing, selling, and providing these systems and methods for conducting product and service demonstrations, Crossmark has directly infringed and continues to directly infringe the '191 Patent, including infringement under 35 U.S.C. § 271(a) and (f).

29. On information and belief, Crossmark has also indirectly infringed and continues to indirectly infringe the '191 Patent by actively soliciting its services to its market of manufacturers and retailers, and inducing direct infringement by training other persons who operate methods and systems that embody or otherwise practice one or more of the claims of the '191 Patent.

30. On information and belief, Crossmark has also indirectly infringed and continues to indirectly infringe the '191 Patent by contributory infringement by providing "Retailer Solutions" to its clients that improve "the shopper experience and driving sales through quality product demonstrations", i.e. the core essence of the claims within the '191 Patent. As advertised on their website, Crossmark's "nationwide Events group employs more than 8,000 Event Specialists" are trained in the processes that are claimed in the '191 Patent. Crossmark even goes are far as providing their Event Specialists with certified training on these methods, thus proliferating the extent of direct infringement of the '191 Patent.

31. On information and belief, Crossmark will continue to infringe the '191 Patent unless enjoined by this Court.

32. On information and belief, Crossmark's infringement of the '191 Patent is, has been, and continues to be willful and deliberate.  Indeed, Crossmark has infringed the '191 patent with full knowledge of this patent, including full knowledge that its actions constituted infringement of the '191 Patent.

33. As a direct and proximate result of Crossmark's infringement of the '191 Patent, Plaintiffs have been and continue to be damaged in an amount yet to be determined.

34. Unless a preliminary and permanent injunction are issued enjoining Crossmark and its officers, agents, servants and employees, and all others acting on their behalf or in concert with Crossmark, from infringing the '191 Patent, Plaintiffs will be greatly and irreparably harmed.

## SECOND CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR DIRECT, CONTRIBUTORY AND INDUCING INFRINGEMENT OF U.S. PATENT NO. 7,444,305

35. Plaintiff incorporates herein by reference the allegations set forth in the above paragraphs of the Complaint as though fully set forth herein.

36. A true and correct copy of the '305 Patent is attached as Exhibit B and incorporated herein by reference. Defendant Crossmark uses, sells, and/or provides systems and methods for conducting product and service demonstrations to its clients as it aims to service their marketing needs. By doing so Crossmark generates significant revenue from its customers on a regular basis.

37. By using, implementing, selling, and providing these systems and methods for conducting product and service demonstrations, Crossmark has directly infringed and continues to directly infringe the '305 Patent, including infringement under 35 U.S.C. § 271(a) and (f).

38. On information and belief, Crossmark has also indirectly infringed and continues to indirectly infringe the '305 Patent by actively soliciting its services to its market of manufacturers and retailers, and inducing direct infringement by training other persons who operate methods and systems that embody or otherwise practice one or more of the claims of the '305 Patent.

39. On information and belief, Crossmark has also indirectly infringed and continues to indirectly infringe the '305 Patent by contributory infringement by providing "Retailer Solutions" to its clients that improve "the shopper experience and driving sales

through quality product demonstrations", i.e. the core essence of the claims within the '305 Patent. As advertised on their website, Crossmark's "nationwide Events group employs more than 8,000 Event Specialists" are trained in the processes that are claimed in the '305 Patent. Crossmark even goes are far as providing their Event Specialists with certified training on these methods, thus proliferating the extent of direct infringement of the '305 Patent.

40. On information and belief, Crossmark will continue to infringe the '305 Patent unless enjoined by this Court.

41. On information and belief, Crossmark's infringement of the '305 Patent is, has been, and continues to be willful and deliberate.  Indeed, Crossmark has infringed the '305 patent with full knowledge of this patent, including full knowledge that its actions constituted infringement of the '305 Patent.

42. As a direct and proximate result of Crossmark's infringement of the '305 Patent, Plaintiffs have been and continue to be damaged in an amount yet to be determined.

43. Unless a preliminary and permanent injunction are issued enjoining Crossmark and its officers, agents, servants and employees, and all others acting on their behalf or in concert with Crossmark, from infringing the '305 Patent, Plaintiffs will be greatly and irreparably harmed.

## THIRD CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR
## BREACH OF CONTRACT

44. The NDA is a valid and enforceable contract, Mass Connections has performed fully its obligations under the NDA, and Crossmark's performance under the NDA has not been excused.

45. Mass Connections provided confidential and/or proprietary information to Crossmark solely for the purpose of exploring a partnership between the parties and specifically relying on the explicit protections afforded by the NDA.  In violation of the explicit terms of the NDA, Crossmark has misused and continues to misuse this

information for the forbidden purpose of unfairly competing with Mass Connections. By this conduct, Crossmark has willfully breached the explicit provisions of the NDA.

46. Mass Connections has no adequate legal remedy for this breach of contract in that damages are inadequate to remedy the harm for the misuse of Mass Connections confidential and/or proprietary information, including the resultant harm to Mass Connections' business.

47. As a result of Crossmark's actions in breaching and conspiring to breach the contract, Mass Connections is entitled to equitable relief in the form of injunctive relief and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Crossmark as a result of such actions, including the imposition of a constructive trust over the proceeds of such actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Social Sampling, Inc. and Mass Connections, Inc. pray for judgment against Defendant Crossmark as follows:

(1) For a judicial determination and declaration that Defendants have directly infringed, and continue to directly infringe, United States Letters Patent Nos. 7,797,191 and 7,444,305;

(2) For a judicial determination and declaration that Defendants have induced, and continue to induce, the infringement of United States Letters Patent Nos. 7,797,191 and 7,444,305;

(3) For a judicial determination and declaration that Defendants have contributorily infringed, and continues to contributorily infringe, United States Letters Patent Nos. 7,797,191 and 7,444,305;

(4) For a judicial determination and decree that Defendants have breached the NDA;

(5) For a judicial determination and decree that Defendants, their respective subsidiaries, officers, agents, servants, employees, licensees, and all other persons or entities acting or attempting to act in active concert or participation with them or acting on

their behalf, be preliminarily and permanently enjoined from further infringement of the '191 and '305 Patents or from further breaches of the NDA;

(6) For a declaration that Defendants notify all of their customers and users of the infringing system and customers' participation in the infringement with Defendants' encouragement, and that Defendants encourage customers to cease all such infringing actions;

(7) For a judicial decree that orders Defendants to account for and pay to Plaintiffs all damages caused to Plaintiffs by reason of Defendants' infringement pursuant to 35 U.S.C. Section 284;

(8) For a judicial determination and decree that Defendant's infringement of United States Letters Patent Nos. 7,797,191 and 7,444,305 has been, and continues to be, willful and deliberate and for an award of enhanced damages pursuant to 35 U.S.C. Sec. 284 and 285;

(9) For a judicial decree that orders Defendants to account for and pay to Plaintiffs all damages caused to Plaintiffs by reason of Defendants' breach of the NDA, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants' as a result of such actions, including the imposition of a constructive trust over the proceeds of such actions.;

(10) For an award of damages according to proof at trial;

(11) For a judicial declaration that this case is exceptional under 35 U.S.C. Section 285 and Defendants be ordered to pay the Plaintiffs' costs, expenses, and reasonable attorney's fees pursuant to 35 U.S.C. Sections 285;

(12) For a judicial order awarding to Plaintiffs' pre-judgment and post-judgment interest on the damages caused to it by Defendants infringement; and

(13) For any such other and further relief as the Court may deem just and proper under the circumstances.

1 | Dated: September 18, 2012 | **ONE LLP**

By: _____
Nathaniel L. Dilger, Esq.
Attorneys for Plaintiffs, Social Sampling, Inc.
and Mass Connections, Inc.

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated: September 18, 2012         **ONE LLP**

By: _____
Nathaniel L. Dilger, Esq.
Attorneys for Plaintiffs, Social Sampling, Inc., and Mass Connections, Inc.

20986.1

**COMPLAINT**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

### SACV12- 1576 CJC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [ ] Southern Division | [ ] Eastern Division |
| --- | --- | --- |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

| Name & Address: <br> Nathaniel L. Dilger (Bar No. 196203) <br> Peter R. Afrasiabi, Esq. (Bar No. 193336) <br> ONE LLP, 4000 MacArthur Blvd. <br> West Tower, Suite 1100, Newport Beach, CA 92660 <br> Tel: 949-502-2870    Fax: 949-258-5081 | |
|---|---|

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Social Sampling, Inc. and Mass Connections, Inc., <br><br> PLAINTIFF(S) <br> v. <br><br> Crossmark, Inc.; Shopper Events, LLC; and Does 1-5, inclusive, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **SACV12 - 01576 CJC (ANx)** <br><br><br> SUMMONS |
|---|---|

TO:   DEFENDANT(S): Crossmark, Inc.; Shopper Events, LLC; and Does 1-5, inclusive

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Nathaniel L. Dilger__, whose address is __ONE LLP, 4000 MacArthur Blvd., West Tower, Suite 1100, Newport Beach, CA 92660__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: __SEP 18 2012__

Clerk, U.S. District Court

By: __DODJIE LAGMAN__
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

COPY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Social Sampling, Inc. and Mass Connections, Inc. | Crossmark, Inc.; Shopper Events, LLC; and Does 1-5, inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| ONE LLP, 4000 MacArthur Blvd., West Tower, Suite 1100, Newport Beach, CA 92660; Tel: 949-502-2870; Fax: 949-258-5081 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No        ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Patent Infringement (35 U.S.C. §§ 1 et seq.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## SACV12 - 01576 CJC (ANx)

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Nathaniel L Dilger /s/_  Date September 19, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |