FILED

2013 SEP 23  PM 2: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _LAW_

1  Kenneth G. Parker (SBN No. 182911)
2  Casey H. Kempner (SBN No. 272149)
   Haynes and Boone, LLP
3  18100 Von Karman Avenue, Suite 750
   Irvine, CA  92612
4  T:  949-202-3000
5  F:  949-202-3001
   E-Mail:  kenneth.parker@haynesboone.com
6          casey.kempner@haynesboone.com
7
   John Russell Emerson (*Pro Hac Vice*)
8  Charles M. Jones II (*Pro Hac Vice*)
9  Haynes and Boone, LLP
   2323 Victory Avenue, Suite 700
10 Dallas, TX  75219
11 T:  214-651-5000
   F:  214-200-5400
12 E-Mail: russ.emerson@haynesboone.com
13         charlie.jones@haynesboone.com
14
15 Attorneys for Defendants
   CROSSMARK, INC. AND
16 SHOPPER EVENTS, LLC
17          IN THE UNITED STATES DISTRICT COURT
18       FOR THE CENTRAL DISTRICT OF CALIFORNIA
                 SOUTHERN DIVISION
19

| 20 SOCIAL SAMPLING, INC. and MASS CONNECTIONS, INC., | Case No. SACV12-01576 CJC (ANx) Hon. Cormac J. Carney |
|---|---|
| 21 | |
| 22            Plaintiffs, | **DEFENDANTS CROSSMARK, INC. AND SHOPPER EVENTS,** |
| 23     v. | **LLC'S SECOND AMENDED ANSWER, AFFIRMATIVE** |
| 24 CROSSMARK, INC.; SHOPPER EVENTS, LLC; and DOES 1-5, | **DEFENSES, AND COUNTERCLAIMS** |
| 25 | **[Federal Rules of Civil Procedure 7.1]** |
| 26            Defendants. | |
| 27 | |
| 28 | Complaint Filed:  September 18, 2012 |

ORIGINAL

BY FAX

Defendants CROSSMARK, Inc. and Shopper Events, LLC (collectively, "Defendants") file this Second Amended Answer to Social Sampling, Inc. and Mass Connections, Inc.'s (collectively, "Plaintiffs") Complaint for Patent Infringement, Permanent Injunction, and Damages and Demand For Jury Trial and plead their Affirmative Defenses and Counterclaims as follows:

## AMENDED ANSWER

## THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 and therefore deny those allegations.

2.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore deny those allegations.

3.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3 and therefore deny those allegations.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 and therefore deny those allegations.

5.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and therefore deny those allegations.

6.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 and therefore deny those allegations.

7.      CROSSMARK, Inc. is a Delaware corporation with its principal place of business at 5100 Legacy Drive, Plano, Texas 75024.  Shopper Events, LLC is

1  99% owned by Shopper Events, Inc. and 1% owned by CROSSMARK, Inc.

2  Defendants deny the remaining allegations of Paragraph 7.

3      8.    Defendants deny that they participated in any conspiracy in violation

4  of any law or engaged in conduct or made statements in furtherance of any

5  conspiracy.  Defendants deny the remaining allegations of Paragraph 8 as to

6  Defendants.  Defendants lack knowledge or information sufficient to form a belief

7  about the truth of the allegations concerning defendants other than CROSSMARK,

8  Inc. or Shopper Events, LLC and therefore deny the remaining allegations of

9  Paragraph 8.

10      9.    Paragraph 9 contains no assertion of law or fact and no response is

11  required.

12  **JURISDICTION AND VENUE**

13      10.    Defendants admit that the Complaint purports to assert claims for

14  patent infringement under the laws of the United States and that this Court has

15  subject-matter jurisdiction over such claims.  Defendants deny the remaining

16  allegations of Paragraph 10.

17      11.    Defendants do not contest the propriety of venue.  Defendants

18  specifically deny all allegations of wrongdoing.  Defendants deny the remaining

19  allegations of Paragraph 11.

20  **U.S. PATENT NO. 7,797,191**

21      12.    Defendants admit that, on its face, U.S. Patent No. 7,797,191 was

22  issued on September 14, 2010, and is entitled "Promotional Event Tracking

23  System."  Defendants deny the remaining allegations of Paragraph 12.

24      13.    Defendants admit that the '191 patent generally describes a system for

25  coordinating and tracking product and service demonstrations.  Defendants deny

26  the remaining allegations of Paragraph 13.

27

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1

### U.S. PATENT NO. 7,444,305

2    14.     Defendants admit that, on its face, U.S. Patent No. 7,444,305 was
3  issued on October 28, 2008, and is entitled "Methods of Coordinating Products and
4  Service Demonstrations." Defendants deny the remaining allegations of Paragraph
5  14.

6    15.     Defendants admit that the '305 patent generally describes a system for
7  coordinating and tracking product and service demonstrations. Defendants deny
8  the remaining allegations of Paragraph 15.

9

### THE CROSSMARK/MASS CONNECTIONS
### NON-DISCLOSURE AGREEMENT

10

11   16.     Defendants admit that Joe Crafton is the President of CROSSMARK,
12  Inc. Defendants deny the remaining allegations of Paragraph 16.

13   17.     Denied.

14   18.     Defendants admit that representatives of CROSSMARK, Inc. made a
15  presentation to representatives of Mass Connections, Inc. in 2006. Defendants
16  deny the remaining allegations of Paragraph 18.

17   19.     Defendants admit that Mass Connections, Inc. and CROSSMARK,
18  Inc. entered into a "Mutual Confidentiality Agreement Between CROSSMARK,
19  Inc. and Mass Connections" dated February 23, 2006 (the "Confidentiality
20  Agreement"). Defendants deny the remaining allegations of Paragraph 19.

21   20.     Defendants admit that the Confidentiality Agreement placed certain
22  restrictions on either party's use of the other party's "Confidential Information," as
23  defined in the Confidentiality Agreement and, potentially, by relevant parol
24  evidence. Defendants deny the remaining allegations of Paragraph 20.

25   21.     Defendants admit that representatives of Mass Connections, Inc.
26  visited CROSSMARK, Inc.'s Plano or Dallas-area office. Defendants deny the
27  remaining allegations of Paragraph 21.

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

22.     Defendants admit that representatives of CROSSMARK, Inc. made a presentation to representatives of Mass Connections, Inc. in 2006. Defendants deny the remaining allegations of Paragraph 22.

23.     Denied.

24.     Denied.

25.     Denied.

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR
### DIRECT, CONTRIBUTORY AND INDUCING INFRINGEMENT
### OF U.S. PATENT NO. 7,797,191

26.     Defendants incorporate their responses to Paragraphs 1-25.

27.     Defendants admit that CROSSMARK, Inc. is a sales and marketing company that provides sales and retail services to manufacturers and retailers in the consumer-goods industry, which includes product demonstration services. Defendants deny the remaining allegations of Paragraph 27.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

### SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR
### DIRECT, CONTRIBUTORY, AND INDUCING INFRINGEMENT OF
### U.S. PATENT NO. 7,444,305

35.     Defendants incorporate their responses to Paragraphs 1-34.

36.     Defendants admit that CROSSMARK, Inc. is a sales and marketing company that provides sales and retail services to manufacturers and retailers in

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1  the consumer-goods industry, which includes product demonstration services.

2  Defendants deny the remaining allegations of Paragraph 36.

3        37.        Denied.

4        38.        Denied.

5        39.        Denied.

6        40.        Denied.

7        41.        Denied.

8        42.        Denied.

9        43.        Denied.

10  **THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR**

11  **BREACH OF CONTRACT**

12        44.        CROSSMARK, Inc. admits that the "Mutual Confidentiality

13  Agreement Between CROSSMARK, Inc. and Mass Connections" dated February

14  23, 2006, is a valid and enforceable contract between CROSSMARK, Inc. and

15  Mass Connections, Inc.  Defendants deny the remaining allegations of Paragraph

16  44.

17        45.        Denied.

18        46.        Denied.

19        47.        Denied.

20  **PRAYER FOR RELIEF**

21        48.        Defendants deny that Plaintiffs are entitled to any relief of any kind,

22  or at all, and deny that Plaintiffs have suffered any damages of any kind, or at all.

23  ///

24  ///

25  ///

26  ///

27  ///

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE:  FAILURE TO STATE A CLAIM

1.      Plaintiffs' Complaint fails to state a claim upon which any relief may be granted.

### SECOND AFFIRMATIVE DEFENSE:  NON-INFRINGEMENT

2.      Defendants have not and do not infringe, either directly or contributorily, any claim of U.S. Patents Nos. 7,797,191 or 7,444,305.  Further, Defendants have not induced any other defendant, person, or entity to infringe, either directly on contributorily, any claim of U.S. Patents Nos. 7,797,191 or 7,444,305.

### THIRD AFFIRMATIVE DEFENSE:  INVALIDITY OF THE PATENTS-IN-SUIT

3.      U.S. Patents Nos. 7,797,191 and 7,444,305 are each invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. §§ 101, et seq.

### FOURTH AFFIRMATIVE DEFENSE:  ABSENCE OF LIABILITY

4.      Plaintiffs' claims against Defendants are barred by the doctrine of laches, waiver, or legal or equitable estoppel.

### FIFTH AFFIRMATIVE DEFENSE:  LICENSE AND LEGAL ESTOPPEL

5.      Plaintiffs' claims against Defendants are barred, in whole or in part, by the doctrines of license and legal estoppel.  Specifically, New Concepts in Marketing, Inc. ("NCIM") licensed certain rights to U.S. Patent No. 7,444,305 from Mass Connections, Inc.  CROSSMARK, Inc. is NCIM's successor in interest.

### SIXTH AFFIRMATIVE DEFENSE:  CIRCULAR INDEMNITY

6.      Plaintiffs' claims against Defendants are extinguished, in whole or in part, by circular indemnity.  A contract between Plaintiff Mass Connections, Inc. and Defendant Shopper Events, LLC entitled "Walmart Promotional Event Master Demo Services Agreement" obligates Plaintiff Mass Connections, Inc. to defend,

indemnify, and hold harmless Defendant Shopper Events, LLC and its affiliates from and against any Loss (as defined in the aforementioned contract) to the extent caused by the infringement of any of Plaintiff Mass Connections, Inc.'s patents. While Defendants deny all allegations of infringement of the patents-in-suit, in the event that Plaintiffs become entitled to any damages from Defendant Shopper Events, LLC or its affiliates on Plaintiffs' claims of patent infringement, Plaintiff Mass Connections, Inc. must, at a minimum, pay back Defendant Shopper Events, LLC and its affiliates whatever Plaintiffs recover from Defendant Shopper Events, LLC and its affiliates on Plaintiffs' patent-infringement claims. Thus, Plaintiffs' claims for patent infringement are extinguished.

## PRAYER FOR RELIEF

Defendants respectfully request that this Court:

a.   Enter judgment that Plaintiffs take nothing by way of their Complaint;

b.   Determine that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Defendants are entitled to an award of their costs and attorneys' fees incurred in connection with this action;

c.   Award Defendants their costs in this action;

d.   Award Defendants all such other and further relief at law or in equity to which they may show themselves entitled.

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1   Dated: September 23, 2013                    Respectfully submitted,

2

3

4                                               Kenneth G. Parker

5                                               John Russell Emerson

6                                               Casey H. Kempner

7                                               HAYNES AND BOONE, LLP

8                                               Attorneys for Defendants

9                                               Crossmark, Inc. and
                                                Shopper Events, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

**COUNTERCLAIMS**

**I.    JURISDICTION AND VENUE**

1.       This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

2.       This Court has personal jurisdiction over Plaintiffs at least because Plaintiffs filed their claim for patent infringement in this Court in response to which this counterclaim is filed.

3.       Venue for these counterclaims is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

**II.    PARTIES**

4.       CROSSMARK, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.

5.       Shopper Events, LLC is a Delaware limited liability company with its principal place of business in Rogers, Arkansas.

6.       On information and belief, Mass Connections, Inc. is a California corporation with its principal place of business in Sunset Beach, California.

7.       On information and belief, Social Sampling, Inc. is a California corporation with its principal place of business in Stanton, California.

**III.    FIRST CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

8.       Because Plaintiffs have brought this action against Defendants, a justiciable controversy exists between Plaintiffs and Defendants with respect to whether Defendants have infringed any valid claim of U.S. Patents Nos. 7,797,191 or 7,444,305.

9.       Claim 1 of U.S. Patent No. 7,444,305 is that patent's only independent claim.

10.       Defendants do not infringe any claim of U.S. Patent No. 7,444,305 at

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

least because they do not perform, induce performance, or contribute to the performance of all limitations of claim 1 of that patent. Specifically, Defendants do not perform, induce performance, or contribute to the performance of at least the limitation of claim 1 of U.S. Patent No. 7,444,305 that requires "recording in the computer-readable medium time and attendance information for the event operator derived from purchasing information received from a first purchase using the activated card in a card-reading system and a later second purchase using the activated card."

11.     Claim 1 of U.S. Patent No. 7,797,191 is that patent's only independent claim.

12.     Defendants do not infringe any claim of U.S. Patent No. 7,797,191 at least because they do not perform, induce performance, or contribute to the performance of all limitations of claim 1 of that patent. Specifically, Defendants do not perform, induce performance, or contribute to the performance of at least the limitation of claim 1 of U.S. Patent No. 7,797,191 that requires "comparing the one or more start times to the one or more requested times using one or more computer processors in communication with the computer readable medium to determine participation information for the one or more event operators."

13.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Defendants are entitled to a declaration from the Court that Defendants have not infringed any valid claim of U.S. Patents Nos. 7,797,191 or 7,444,305.

## IV.   SECOND CLAIM FOR RELIEF:  DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,797,191

14.     Because Plaintiffs have brought this action against Defendants, a justiciable controversy exists between Plaintiffs and Defendants with respect to whether U.S. Patent No. 7,797,191 is valid.

15.     On its face, U.S. Patent No. 7,444,305 issued from U.S. Patent

1    Application No. 10/013,826, which was filed on December 7, 2001.

2        16.      On its face, U.S. Patent No. 7,444,305 indicates that U.S. Patent

3    Application No. 10/013,826 published as US 2003/0229583 A1 on December 11,

4    2003.

5        17.      On its face, U.S. Patent No. 7,797,191 issued from U.S. Patent

6    Application No. 11/059,746, which was filed on February 17, 2005.

7        18.      U.S. Patent No. 7,797,191 purports to be a continuation-in-part of

8    U.S. Patent No. 7,444,305.

9        19.      Claim 1 of U.S. Patent No. 7,797,191 contains a limitation that

10   requires "providing a promotional event request interface accessible to an event

11   requester over a network, said promotional event request interface comprising one

12   or more selection tools configured to allow the event requester to provide order

13   information for a promotional event."  Because claim 1 is the only independent

14   claim of U.S. Patent No. 7,797,191, all claims of that patent contain this limitation.

15       20.      The specification of U.S. Patent No. 7,444,305 does not disclose or

16   support the limitation described in Paragraph 19 above.  For at least this reason, no

17   claim of U.S. Patent No. 7,797,191 is entitled to the filing date or effective filing

18   date of U.S. Patent No. 7,444,305.

19       21.      The effective filing date for all claims of U.S. Patent No. 7,797,191 is

20   no earlier than February 17, 2005.

21       22.      Because the patent application that resulted in U.S. Patent No.

22   7,444,305 published more than one year before the effective filing date of U.S.

23   Patent No. 7,797,191, that published patent application (US 2003/0229583 A1)

24   qualifies as prior art against U.S. Patent No. 7,797,191 under 35 U.S.C. § 102(b).

25       23.      At least claim 1 of U.S. Patent No. 7,797,191 is invalid at least

26   because the combination of publication US 2003/0229583 A1 and a website

27   published and maintained by Club Demonstration Services, Inc. at least as early as

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1   March 2001renders that claim obvious under 35 U.S.C. § 103.  A copy of pages

2   from the Club Demonstration Services, Inc. website as those pages appeared in

3   March 2001 is attached as <u>Exhibit A</u> to this Second Amended Answer, Affirmative

4   Defenses, and Counterclaims.

5       24.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Defendants are entitled to a

6   declaration from the Court that U.S. Patent No. 7,797,191 is invalid under the

7   provisions of Title 35, United States Code, including, but not limited to Sections

8   101, 102, 103, or 112.

9   **V.     THIRD CLAIM FOR RELIEF:  DECLARATORY JUDGMENT**

10  **THAT PLAINTIFF MASS CONNECTIONS, INC. MUST DEFEND,**

11  **INDEMNIFY, AND HOLD HARMLESS DEFENDANTS AGAINST**

12  **PLAINTIFFS' OWN CLAIMS OF PATENT INFRINGEMENT**

13      25.     On April 23, 2009, Plaintiff Mass Connections, Inc. and Defendant

14  Shopper Events, LLC formed and executed a written contract entitled "Walmart

15  Promotional Event Master Demo Services Agreement" (the "Demo Services

16  Agreement").

17      26.     Plaintiff Mass Connections, Inc. and Defendant Shopper Events, LLC

18  are parties to the Demo Services Agreement.

19      27.     By its terms, the Demo Services Agreement became effective as of

20  May 1, 2009.  A true and correct copy of the executed Demo Services Agreement

21  is attached as <u>Exhibit B</u> to this Second Amended Answer, Affirmative Defenses,

22  and Counterclaims.

23      28.     The Demo Services Agreement is a valid and enforceable contract.

24      29.     Defendant Shopper Events, LLC has fully performed its obligations

25  under the Demo Services Agreement.

26      30.     The Demo Services Agreement provides, among other things, that

27  Plaintiff Mass Connections, Inc. shall defend, indemnify, and hold harmless

28

12

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Shopper Events, LLC and its affiliates from and against any Loss (as defined in the Demo Services Agreement) to the extent caused by the infringement of any of Plaintiff Mass Connections, Inc.'s patents.  And while Defendants deny all allegations of infringement of the patents-in-suit, Plaintiff Mass Connections, Inc. has affirmatively pleaded that Defendant Shopper Events, LLC and its affiliates infringe the patents-in-suit, thus entitling Shopper Events, LLC and its affiliates to indemnification from Mass Connections, Inc.

31.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Defendants are entitled to a declaration from the Court that Plaintiff Mass Connections, Inc. must defend, indemnify, and hold harmless Defendants against Plaintiffs' own claims of patent infringement.

## VI.   FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT

32.     Defendants incorporate Paragraphs 25-31 of their Counterclaims by reference as though fully set forth herein.

33.     Plaintiff Mass Connections, Inc. has materially breached the Demo Services Agreement by failing to defend, indemnify, and hold harmless Defendant Shopper Events, LLC and its affiliates from losses they have sustained and continue to sustain as a result of Plaintiff Mass Connections, Inc.'s patent-infringement action against Defendant Shopper Events, LLC.

34.     Plaintiff Mass Connections, Inc. has no excuse for its failure to perform its obligations under the Demo Services Agreement.

35.     Plaintiff Mass Connections, Inc.'s material breach of the Demo Services Agreement has caused Defendant Shopper Events, LLC and its affiliates considerable injury.  Defendant Shopper Events, LLC and its affiliates are entitled to recover from Plaintiff Mass Connections, Inc. an amount adequate to compensate them for the injury they have sustained as a result of Plaintiff Mass Connections, Inc.'s breach of the Demo Services Agreement.

## VII.  EXCEPTIONAL CASE

36.  To the extent that this is an exceptional case under 35 U.S.C. § 285, Defendants are entitled to recover their costs and attorneys' fees incurred in connection with this action from Plaintiffs.

## PRAYER FOR RELIEF

Defendants respectfully request that this Court:

a.  Enter judgment declaring that Defendants have not infringed any valid claim of U.S. Patents Nos. 7,797,191 or 7,444,305;

b.  Enter judgment declaring that U.S. Patent No. 7,797,191 is invalid;

c.  Enter judgment declaring that Plaintiff Mass Connections, Inc. is obligated to defend, indemnify, and hold harmless Defendants from Plaintiffs' claims of patent infringement;

d.  Award Defendants damages according to proof;

e.  Enter judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and award Defendants their costs and attorneys' fees incurred in connection with this action;

f.  Award Defendants their costs in this action; and

g.  Award Defendants all such other and further relief at law or in equity that is just or proper.

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

1

Dated: September 23, 2013

Respectfully submitted,

2

3

4
Kenneth G. Parker

5
John Russell Emerson

Casey H. Kempner

6
HAYNES AND BOONE, LLP

7

8
Attorneys for Defendants

CROSSMARK, INC. and

9
SHOPPER EVENTS, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS CROSSMARK AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

# EXHIBIT A

INTERNET ARCHIVE WayBackMachine | http://www.clubdemo.com/About_Us.htm | Go | MAY MAR JUN Close
67 captures
2 Dec 98 - 14 Nov 11 | ◀ **5** ▶ 1999 2001 2002 Help

# Club Demonstration Services

(Corporate Office) Phone: 858-272-7237 Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
HOME

ABOUT US      SCHEDULING      POLICIES      PRICES      OFFICES      FEEDBACK

# ABOUT CDS

*We will provide the highest quality demonstrations and services, at the best value, to Costco Wholesale, its vendors and its members.*

Club Demonstration Services is a uniquely focused company with proven expertise in providing customized in-warehouse demonstrations for Costco Wholesale clubs. Since our inception in 1987, we have been influencing Costco members' buying decisions by building consumer awareness and trust for a variety of products in all warehouse departments.

Our mission is to provide high quality product demonstrations and marketing services to Costco Wholesale vendors, with the intent of improving sales through promoting product trial in a friendly, professional style. As the in-house demonstration company for Costco Wholesale, CDS abides by and adheres to all Costco Wholesale policies and standards. Our intention is to create lasting member awareness that will increase sales not just during the demonstration but for months to follow.

CDS currently operates in 124 locations in 23 states throughout the Southwest, Midwest and East Coast. Our corporate office is located in San Diego, California, with satellite offices in Chicago-Illinois, Sterling-Virginia, and Atlanta-Georgia, Carrollton-Texas.

TOP

(Corporate Office) Phone: 858-272-7237 Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
Copyright © 2000 Club Demonstration Services, Inc. All rights reserved.



# Club Demonstration Services

(Corporate Office) Phone: 858-272-7237  Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST

HOME

ABOUT US      SCHEDULING      POLICIES      PRICES      OFFICES      FEEDBACK

## SCHEDULING

*** ANNOUNCEMENT ***

Did you know that you can receive one invoice for all our Costco divisions each time we generate invoices?
Did you also know we can generate monthly reports in excel format that can be emailed to you?
Please speak with your coordinator for details.

| SCHEDULE/CANCEL DEMOS ONLINE |
| SUBMIT YOUR PRODUCT INFORMATION ONLINE |
| WAREHOUSE ADDRESSES |

(Corporate Office) Phone: 858-272-7237  Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
Copyright © 2000 Club Demonstration Services, Inc. All rights reserved.

| INTERNET ARCHIVE | http://www.clubdemo.com/secured/scheduling_texas.htm | Go | | FEB | MAR | APR | Close |
| WayBackMachine | 4 captures | | | ◄ | 8 | ► | Help |
| | 8 Mar 01 - 23 Aug 01 | | | 2000 | 2001 | 2002 | |

# Club Demonstration Services

(Corporate Office) Phone: 858-272-7237  Fax: 858-483-1140
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
HOME

ABOUT US     SCHEDULING     POLICIES     PRICES     OFFICES     FEEDBACK

## TEXAS REGION SCHEDULING FORM

Requests should be made at least two weeks prior to the requested date(s).  **Note:  This lead time *does not* guarantee spaces available for your requested dates.**  You will receive an email/fax confirming your demo requests.  If you do not receive a confirmation within 24 hours, contact the Scheduling Department immediately.  Please review your confirmation carefully.

| Vendor | |
|---|---|
| Phone | |
| FAX | |
| E-mail | |

Scheduling/Broker contact information, if different from above:

| Company name | |
|---|---|
| Work Phone | |
| FAX | |
| E-mail | |

Person placing order: [                    ]
PO#: [None          ]

**Choose one:** ◉ Schedule ○ Cancel     **Choose one:** ◉ Regular ○ Combo ○ Split

Will your product be drop-shipped for the demos? ○ Yes ◉ No
If drop shipment is not received 24 hours prior to the demo, may we purchase? ◉ Yes ○ No
If this is a split demo, can your product run alone at the full labor rate? ◉ Yes ○ No

**Date(s) you wish your product scheduled/canceled:**

| Product name | | Costco Item # | |
|---|---|---|---|
| Product name | | Costco Item # | |

**Select the warehouses in which you want demos scheduled/canceled:**
**ONLY REQUEST CLUBS WHERE YOUR PRODUCT IS CARRIED**



**SCHEDULE ALL WAREHOUSES?** ○ Yes ◉ No

### Instructions:

---

If this is a split demo and you ALREADY have a split partner, complete the following:

| Split Partner | |
|---|---|
| Rep. Name | |
| Phone | |
| FAX | |
| E-mail | |



| Product name | | Costco Item # | |
|---|---|---|---|
| Product name | | Costco Item # | |

Can the product run alone at the full labor rate? ◉ Yes ○ No

Instructions For Split Demonstration:

[ Submit Form ]   [ Reset Form ]

**TOP**

(Corporate Office) Phone: 858-272-7237  Fax: 858-483-1140
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
Copyright © 2000 Club Demonstration Services, Inc. All rights reserved.

INTERNET ARCHIVE
WayBackMachine
http://www.clubdemo.com/Dpis/DPIS_form.htm  [Go]
51 captures
7 Mar 01 - 18 Jun 09

FEB  MAR  APR  Close
◄   **7**   ►
2000  2001  2002  Help

# Club Demonstration Services

(Corporate Office) Phone: 858-272-7237 Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
HOME

ABOUT US       SCHEDULING       POLICIES       PRICES       OFFICES       FEEDBACK

# DEMONSTRATION PRODUCT INFORMATION SHEET

| | |
|---|---|
| **First name** | |
| **Last name** | |
| **Vendor Name** | |
| **Broker Name** | |
| **Phone** | |
| **Fax** | |
| **E-mail** | |

Where is this item distributed?

☒ San Diego   ☒ Midwest   ☒ Texas   ☒ Northeast   ☒ Southeast   ☒ Mexico

| **Product name** | | **Costco item #** | |
|---|---|---|---|

Costco Department # [12-Candy ▼]

Pack: [    ]   Size of one sell unit: [        ]

Demo samples: ◉ Purchase   ◎ Drop-ship

May we purchase samples if the drop-shipment is not received 24 hours prior to the demo? (The demo will be canceled and rescheduled if authorization is not given)   ◉ Yes   ◎ No

How many demo servings are there in each sell unit? (Examples: 2pk/64oz orange juice, serving 3 oz per cup = 43 servings per sell unit; 1pk/12ct burritos, serving 1/5 burrito = 60 samples per sell unit) [        ]

What is the desired size of the sample portion? [                    ]

If product sells out, is not available, or if inventory is low, can another product be substituted? ◉ Yes   ◎ No
If Yes, indicate the product name and Costco item number:

| **Product name** | | **Costco item #** | |
|---|---|---|---|

| **Product name** | | **Costco item #** | |
|---|---|---|---|

**If substitute item has was not demoed by CDS in the past six months, fill out a DPIS for that item.**

Will a demo kit be provided?   ◎ Yes   ◉ No

Demonstration Product Information Sheet                                          Page 2 of 3

If Yes, can the demo be performed if the kit is not received?    ⦿ Yes   ◎ No

Equipment: (check necessary equipment)

| ☒ Microwave | ☒ Convection oven | ☒ Toaster oven |
|---|---|---|
| ☒ Jet stream oven | ☒ Dazey pot | ☒ Electric skillet |
| ☒ Pizza oven | ☒ Coffee pot | ☒ Wok |
| ☒ Blender | ☒ Air pot | |

**Enhancement items to be purchased (billed to vendor; i.e. butter/oil needed to prepare product)**

Enhancement items must be purchased in the warehouse.  We will not authorize an enhancement item to be purchased outside the warehouse.

**Read the following guidelines before filling out the prep instructions.**

| Foil cannot be used in pans, skillets, or the racks of ovens |
|---|
| Scissors cannot be used to cut most foods due to health regulations (exceptions: beef jerky, power bars, fruit roll-ups, and like items) |
| Knives cannot be used to open packages |
| Toothpicks are not allowed in most warehouses |

Preparation/demonstration instructions: (Give detailed information only; do not list "see instructions on package.")

May preparation instructions be changed? (i.e. change of recipe or equipment)   ⦿ Yes   ◎ No
If yes, change preparation instructions to:

Key selling points are an important tool used in selling your product.   They are the words you want the Sales Advisors to say.  The more information you provide below, the more we will give to members to sell your product.  Example:   If a frozen product is served defrosted, what is the shelf life of the product in the defrosted state?  A person watching his cholesterol or sugar needs to know fat and sugar content of the product.  Is this product a good choice for meals, snacks, special events, etc.?  Remember to provide us with nutritional information concerning your product.

Key selling points:

Demonstration Product Information Sheet                                    Page 3 of 3



TOP

(Corporate Office) Phone: 858-272-7237  Fax: 858-272-3791
(Corporate Office) Hours: 7 a.m. To 5 p.m. PST
Copyright © 2000 Club Demonstration Services, Inc. All rights reserved.

# EXHIBIT B

SHOPPER EVENTS, LLC

WALMART PROMOTIONAL EVENT

MASTER DEMO SERVICES AGREEMENT

This Master Demo Services Agreement ("Agreement") is made effective as of May 1, 2009 ("Effective Date"), by and between Shopper Events, LLC, a Delaware limited liability company ("SEL"), with a principal place of business at 5100 Legacy Drive, Plano, Texas 75024 and   Mass Connections, Inc., a California corporation ("EMC") with a principal place of business at 13131 East 166th Street, Cerritos, California 90703. SEL is sometimes referred to hereafter as "Provider."

<u>Recitals</u>

Whereas, SEL is an organization specializing in in-store promotional event planning, field events, market research and consulting services and the business of providing professional marketing services for the sale of consumer goods products, and as Provider hereby agrees to provide the Services described in Section 1 below to EMC on the terms and conditions set forth herein;

Whereas, SEL has an agreement with Walmart Stores, Inc. and its affiliates (collectively, "Walmart"), to exclusively provide in-store promotional event planning services, including without limitation, the Services, to manufacturers or distributors to the extent to be performed in a Walmart location in the United States; and

Whereas, EMC is also an organization specializing in in-store promotional event planning, and desires to conduct one or more such events in one or more Walmart locations, using the calendaring resources of SEL, and certain Demo Equipment (defined below) owned or controlled by SEL.

Now, therefore, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, EMC and each Provider agree as follows:

### 1.   STATEMENT(s) of WORK:

Provider agrees to (i) conduct in-store promotional event calendaring and planning services (the "Services") for EMC as outlined in the applicable separately executed Statement(s) of Work ("SOW(s)") agreement(s) which details the specific services, terms and conditions of each project and (ii) to rent to EMC for use in conducting a demo program in a Walmart location ("Event") certain Demo Equipment as outlined in this Agreement and the attached SOW.

Should a conflict in the contractual language arise between the terms and conditions in the SOW and this Agreement, the terms and conditions set forth in the SOW shall prevail. Should the contract date of a SOW extend beyond the term of this Agreement, EMC agrees that this Agreement shall automatically be extended to the contract end date of the SOW.

In the event the parties sign one or more SOW(s) before signing a Master Services Agreement, the terms and conditions of SEL's then-current standard form of Master Services Agreement shall prevail until such time as the parties execute a Master Demo Services Agreement.

### 2.   TERM OF CONTRACT.

This Agreement shall be effective beginning on the Effective Date and shall terminate on the date one year from the Effective Date, unless earlier terminated as provided herein.  This Agreement shall automatically renew for additional one (1) year terms at the end of the term or any renewal term of this Agreement unless either party provides the other party with thirty (30) days' prior written notice of its intent not to renew.

3.   PAYMENTS, INVOICES & DISPUTES.

Required project payments are due on the dates specified in each SOW. Additional amounts due hereunder will be invoiced in accordance with SEL's standard billing practices.

EMC agrees to make payment for the Program, as defined in the SOW as follows:

Initial Payment: An initial payment equal to 100% of Estimated Fees due shall be made on the earlier of the date 30 days prior to first Event of the Program, or the date of first calendering of an Event. If any payment is not received in accordance with this Section 3, Provider may, in its sole discretion, cancel the Program or any element thereof, in accordance with the terms of the MSA.

Final Payment: A final payment equal to the amount of any unpaid Estimated Fees (described in the applicable SOW) plus any adjusted fees for any additional assessed charges due, less any reductions due to changes in the Program shall be due upon receipt of the final invoice. In the event EMC disputes a final invoice under any SOW, EMC shall provide Provider in writing the reasons underlying the dispute, within fifteen (15) days of receipt of invoice and the parties shall resolve the dispute in good faith, or the invoice will be deemed correct and accepted in full by EMC. EMC hereby waives any objection it may have to paying such invoices if EMC fails to raise any objection within the fifteen (15) day period.

In the event that payment terms are not expressly stated in this SOW, payment of amounts due shall be made in accordance with the terms of this MSA. If payment has not been received by the dates required, EMC agrees to pay a late fee of 2% of the total outstanding amounts due, plus interest in the unpaid balance at the highest rate allowed by law until paid. The terms of this Section 3 shall not be construed to waive, modify, or amend the right of SEL to terminate, cancel or modify any Program or Event, as defined in any SOW, in the event payment is not made as provided for in the SOW.

4.   RELATIONSHIP OF PARTIES.

Provider, its affiliates and other third party service providers and their respective employees are not employees of EMC for any purpose. Provider is an independent contractor. Neither Provider nor its employees shall be considered employees of EMC, and neither party shall be held liable for any obligations incurred by either party other than as specified herein, it being specifically understood that the respective businesses of each of the parties shall be operated separately.

5.   MASTER DEMO EQUIPMENT RENTAL.

SEL, acting as authorized rental agent on behalf of the lawful owner of the Demo Equipment ("Owner"), leases certain mobile demonstration carts, and related equipment (collectively the "Demo Equipment"), to be used exclusively in connection with in-store demonstrations in stores of Walmart and its affiliates. As authorized rental agent of the Demo Equipment, SEL executes this Agreement on behalf of Owner and, subject to the terms and conditions stated in this Section 5, hereby rents to EMC the Demo Equipment to be used in connection with the Services described hereunder. The applicable SOW attached hereto shall identify any specific Demo Equipment being rented by EMC as well as the applicable rental period and fees. EMC hereby agrees that all applicable covenants, debts and obligations of EMC relating to the use of Demo Equipment hereunder shall be deemed made or owed directly to Owner, as if such person had been a direct party to this Agreement.

a.   Condition of the Demo Equipment. SEL hereby rents the Demo Equipment to EMC "as is" with no representations and warranties, except as expressly stated herein. EMC hereby represents that it has received the Demo Equipment in good and operational condition, except where EMC has specifically noted existing damage in the "Cart Activity Log". EMC shall sign the Cart Activity Log and deliver it to SEL prior to use of the Demo Equipment. EMC hereby accepts financial responsibility for the condition of the Demo Equipment, excluding only the damage or defects expressly noted by EMC in the Cart Activity Log, or otherwise in writing at the time of delivery, in the event the Demo Equipment is damaged or destroyed while in the possession of EMC or its agents or employees.

b.   Limited Use – Sub-Letting. EMC agrees to abide by the following restrictions:

1.   EMC shall use the Demo Equipment only in conducting the designated, approved, Walmart in-store promotion pursuant to the applicable SOW, unless EMC has received the prior written consent of SEL.

    2.   EMC shall not lend, sub-let, nor remove the Demo Equipment from the premises where delivery was made, without SEL's express prior written authorization.

    3.   EMC shall not use the Demo Equipment for any illegal purposes or in a manner that is unsafe or contrary to its intended use, or otherwise violates local moral and social standards.

c.   **Security Deposit.** Upon the signing of the SOW renting the Demo Equipment, EMC agrees to pay SEL a security deposit in the amount stated in the applicable SOW. This security deposit will be reimbursed in full within thirty (30) business days of the return of the Demo Equipment to SEL, subject to deductions having been made for any damage to the Demo Equipment noted upon return to SEL. In the event EMC is liable for damage to the Demo Equipment which exceeds the deposit provided for in the applicable SOW, SEL may apply all or a portion of any deposit under any SOW hereunder to satisfy such damages or EMC will pay SEL for the balance owed which exceeds the security deposit.

d.   **Maintenance; Damage and Theft:**

    1.   EMC will use, maintain, and operate the Demo Equipment in a careful and responsible manner.

    2.   EMC will be held liable for any damages he/she causes to the Demo Equipment, and for any damages to property or person of any third party cause by improper or negligent operation of the Demo Equipment by EMC.

    3.   In the event EMC does not return the Demo Equipment, he/she will be liable to pay SEL the full replacement value of the Demo Equipment as stated in the applicable SOW.

    4.   In the event that EMC returns the Demo Equipment in a bad and/or poorly maintained condition (which cannot be described as the result of normal rental use), requiring special cleaning or attention, the EMC will be liable to pay the cost of cleaning or potential maintenance carried out by a professional specialist. In the event such special cleaning is required, SEL may withhold EMC's security deposit for an additional fifteen (15) business days after formal notice is given by SEL.

e.   **Responsibility and Liability of EMC for Demo Equipment.**

    1.   EMC hereby represents that EMC's employees or agents who will operate the Demo Equipment will have all the information and skills necessary for careful, legal and normal use of the Demo Equipment.

    2.   EMC hereby represents that EMC has the authorization, licenses and legal capacity to have or use the Demo Equipment as contemplated in the Walmart in-store promotion.

    3.   EMC hereby represents that EMC shall be sole custodian of the Demo Equipment during the rental period, and undertakes as such to exercise effective and exclusive control of the Demo Equipment. Consequently, SEL assumes no liability, and EMC bears full liability, during the rental period for the Demo Equipment, in particular in the event of incorrect, imprudent, infringing or illegal use.

    4.   EMC hereby represents that EMC is therefore the sole party responsible for any damage that the Demo Equipment causes to SEL, EMC or any third party, including, without limitation, those under laws governing use and protection of any intellectual property of any party during the rental term as provided in the applicable SOW.

6.   **RESPONSIBILITIES OF EMC.**

Consistent with and subject to the terms of this Agreement, EMC shall perform the responsibilities set forth in any applicable SOW(s) separately executed, including, where applicable, providing evidence of compliance with applicable laws, meeting pre-launch due dates and required calendaring information deliverables, or in providing Provider with any marketing materials for approval if requested, etc. EMC acknowledges that, failure to meet EMC's responsibilities, delays or successive changes by EMC may cause material delays in the Provider's program execution and to the extent necessary in Provider's judgment, cancellation of the program.

7.  **EXPENSE REIMBURSEMENT POLICY.**

Provider shall be entitled to reimbursement from EMC for all out of pocket expenses incurred by Provider in connection with its provisions of Services on EMC's behalf only as expressly provided in any individual SOW.  Provider shall provide a reasonable summary of such expenses for reimbursement by EMC, but shall not be required to provide actual receipts in order to obtain reimbursement.

8.  **INDEMNITY.**

a.   General Indemnification by Provider.  Provider will defend, indemnify and hold EMC harmless from and against any loss, damage, liability, claim, demand, suit and expense (including reasonable attorneys' fees and costs) ("Loss") to the extent caused by the gross negligence or wilfull misconduct of Provider, its affiliates and other third party service providers and their respective employees (collectively, the "Provider Parties") in performing the Services.

b.   General Indemnification by EMC.  EMC shall defend, indemnify and hold the Provider Parties harmless from and against any Loss to the extent caused by:  (i) products, point of sale materials and/or other product related materials and/or goods used or provided by EMC or its client in connection with this Agreement, including but not limited to, any defect in merchandise, or the purpose or use of any product manufactured, produced, demonstrated, or distributed by EMC, (ii) materials or equipment sourced, or research supplied, by EMC and incorporated or used in connection with material or equipment prepared by Provider at EMC's direction, (iii) the negligence or wilfull misconduct of EMC and its employees, agents and other representatives or any parties acting under EMC's control and supervision, including, without limitation, such actions in connection with the use of the Demo Equipment and (iv) the infringement of any of EMC's patents, copyrights, or trademarks, or other proprietary rights held or used by client, on the rights of any third party.

c.   Notice of Claim.  Upon the assertion of any claim or the commencement of any suit or proceeding against an indemnitee by any third party, the indemnitee shall promptly notify the indemnitor of the existence of such claim and shall give the indemnitor a reasonable opportunity to defend and/or settle the claim at its own expense and with counsel of its own selection.  An indemnitee shall not make any settlement of any claims that might give rise to liability of an indemnitor hereunder without the prior written consent of the indemnitor.

d.   Survival.  This Section 7, insofar as it applies to work undertaken or obligations incurred by the parties while this Agreement is in effect, shall survive the termination of this Agreement.

e.   Third Party Beneficiary.  The parties hereto acknowledge that Walmart shall constitute an intended third-party beneficiary under the terms of Section 7, to the extent any Loss suffered by Walmart results from the acts or omissions by EMC.

8.  **INSURANCE.**

EMC shall, at its own expense, obtain and maintain throughout the term of this Agreement and for two (2) years following expiration or earlier termination thereof, Commercial General Liability Insurance on occurrence coverage form, including but not limited to, coverage for Product Liability and Personal & Advertising Injury, providing protection in the amount of at least five million dollars ($5,000,000) per occurrence and annual aggregate against any claims, suits, losses or damages arising as a result of this Agreement.  EMC shall promptly upon request provide a certificate of insurance evidencing that such insurance remains in full effect, in at least the levels stated above, and EMC shall promptly upon execution of this MSA arrange for Provider to be added as "additional insured" to EMC's insurance policies as described above.

9.  **TERMINATION.**

a.   Either party may immediately terminate this Agreement in the event that the other party becomes insolvent, ceases to function as a going concern or to conduct its operations in the normal course of business, files or has filed against it a petition in bankruptcy, or makes an assignment for the benefit of creditors, or has a receiver or trustee appointed for the benefit of creditors, or has a receiver or trustee appointed for any material part of its properties.

b. Provider may terminate this Agreement, including any accepted but uncompleted programs or any SOW, in its sole discretion, to make time slots and Demo Equipment available to another demo company, immediately upon the failure of EMC to make any payment when due and such failure is not cured within five (5) days after notice from Provider.

c. Provider may terminate this Agreement, including but not limited to any rental of the Demo, Equipment, without cause with thirty (30) days written notice, provided, however, that in the event of an ongoing rental of Demo Equipment, the effective date of termination of the rental shall be the final date of the last in-progress rental.

d. Any termination of this Agreement shall not release EMC from the obligation to pay any amount that may then be owing to Provider. In the event of termination of this Agreement, all obligations owed by EMC to Provider shall become immediately due and payable on the effective date of termination, whether otherwise due or not, without notice of any kind. In the event Provider is required to commence a collection action to recover monies owed to it pursuant to this Agreement, or otherwise to pursue remedial action as a result of EMC's default or breach of this Agreement, Provider shall be entitled to reasonable attorneys' fees and legal expenses incurred by it in connection therewith.

e. In the event of termination of this Agreement, Provider shall be relieved from any obligation to provide further Services hereunder. The continuing provision of Services to EMC in completion of any program under an executed SOW, or any other similar act after termination of this Agreement, shall not be construed as a renewal or extension of this Agreement for any further term or as a waiver of such termination.

## 10. LIMITATION OF LIABILITY.

IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, REVENUE, DATA, OR USE, INCURRED BY EITHER PARTY (OR ANY THIRD PARTY), WHETHER IN AN ACTION IN CONTRACT OR TORT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF DAMAGES. THE AMOUNT OF DAMAGES RECOVERABLE BY EMC IS LIMITED TO THE AMOUNT PAID TO PROVIDER. PROVIDED, THAT NOTHING IN THIS PARAGRAPH SHALL BE DEEMED TO EXCLUDE OR LIMIT ANY LIABILITY UNDER ANY APPLICABLE LAW OR STATUTE WHICH, UNDER SUCH LAW OR STATUTE, CANNOT BE EXCLUDED OR LIMITED.

## 11. FORCE MAJEURE.

Provider shall not be deemed in breach hereof on account of any delay in performance of any obligation under this Agreement caused in whole or in part by, or otherwise materially related to, the occurrence of a force majeure event, including but not limited to: war or hostility; failure or delay in land, water or air transportation; act of any government or agency, subdivision or branch thereof; or fire, explosion, flood, storm or other acts of God; or any other cause beyond the reasonable control of Provider. Provider shall promptly notify EMC of the existence of any force majeure event, the expected delays, and the estimated effect upon its performance hereunder.

## 12. CONFIDENTIALITY.

Each of the parties and their employees and other representatives agree to safeguard and keep in strict confidence and trust all information disclosed to them, and not at any time to divulge to any third party, or use except in pursuance of this Agreement, any confidential information that is disclosed to them, including, without limitation, know-how, trade secrets, inventions and product designs, future, proposed or unannounced products, contracts, EMC lists, employee/contractor lists, financial and pricing information, sales and marketing plans and business information. The obligations of this provision shall survive for a period of two (2) years following the expiration or earlier termination of this Agreement, except that with respect to confidential information that qualifies as trade secret information under applicable laws, the obligations shall continue for as long as such trade secret information qualifies as such.

## 13. INTELLECTUAL PROPERTY USE AND OWNERSHIP.

EMC shall undertake to obtain all necessary permission and or license to use any trademarks, trade names, or other proprietary names or marks owned or licensed by EMC, to be used by EMC in connection

with the demos to be performed by EMC hereunder. Unless otherwise expressly agreed in writing, all tangible product of SEL in producing the Services, and any intellectual property associated there with, excluding intellectual property of EMC, shall remain property of SEL or its licensors , including, without limitation, all tools, ideas, concepts, processes, methodologies, and know-how, conceived, developed, or reduced to practice by SEL or its affiliates or subcontractors in performing the Services.

### 14. NO HIRE; NON-SOLICITATION.

In further consideration for the Services to be provided by Provider hereunder, EMC agrees that during the term of this Agreement and for six (6) months thereafter, it will not directly or indirectly (a) employ, solicit for employment, or recommend for employment any person employed by Provider or acting as a representative or independent contractor for Provider or (b) induce any such employee, representative or independent contractor of Provider to terminate their relationship with Provider.

### 15. NOTICES.

All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or by overnight courier to the addresses set forth above.

### 16. ASSIGNMENT.

This Agreement shall be binding upon and inure to the benefit of successors and assigns of the parties hereto. Neither this Agreement nor any SOW may be assigned by EMC without the prior written consent of Provider. Provider may not assign the obligation to perform the Services except as otherwise permitted herein.

### 17. ENTIRE AGREEMENT AND AMENDMENT.

This Master Services Agreement and any and all applicable SOW(s) constitute the entire Agreement between the parties and supersedes any prior agreement between the parties pertaining to the subject matter hereof. There are no other agreements, understandings, warranties or representations between the parties except as set forth in this Agreement. This Agreement may not be amended except in writing executed by both parties. Any SOW shall not be deemed to amend the terms of this Agreement unless and only to the extent expressly so stated in the SOW.

### 18. SEVERABILITY.

If any provision of the Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

### 19. HEADINGS.

The section heading used in this Agreement are for convenience only and shall not be used in interpreting this Agreement or in determining any of the rights or obligations of the parties to this Agreement.

### 20. WAIVER OF CONTRACTUAL RIGHT.

The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

### 21. PUBLIC RELATIONS.

EMC shall work with Provider on various marketing initiatives including but not limited to press releases, quotes and testimonials. EMC shall have final approval on any materials that mention the EMC's company name, employee names and/or information about their relationship with Provider.

**22.  JURISDICTION AND VENUE.**

The parties agree that jurisdiction and venue of any action with respect to a dispute concerning the subject matter of this Agreement shall be in either the courts of Benton County, Arkansas or the United States District Court for the Western District of Arkansas, and each party hereby irrevocably submits to the personal jurisdiction of such courts.

**23.  ATTORNEYS' FEES AND LITIGATION COSTS.**

The parties agree that the prevailing party in any dispute dealing with the terms of this Agreement, including but not limited to, the payment of any monies allegedly due under this Agreement, shall be entitled to reasonable attorneys' fees and all other costs in addition to all other relief granted.

**24.  GOVERNING LAW.**

The laws of the state of Arkansas, without reference to its conflicts of laws provisions, shall govern the application and interpretation of this Agreement.

**25.  DISPUTE RESOLUTION.**

a.  Negotiations.  The parties agree that they will attempt in good faith to resolve any controversy, claim, dispute or question between them arising out of or relating to this Agreement, including the construction or application of this Agreement, promptly by negotiations between the parties.  If a controversy or claim should arise, representatives of the parties will meet at least once and will attempt to resolve the matter.  Either of these representatives may request the other to meet within fourteen (14) days, at a mutually agreed time and place.

b.  Mediation.  If the matter has not been resolved within thirty (30) days of this meeting, the controversy or claim shall be submitted to mediation by a mediator chosen from names of mediators furnished by JAMS or American Arbitration Association.  Each party will pay one-half the mediator's fee.

c.  Waiver of Jury Trial.  To the fullest extent permitted by applicable law, the parties hereby irrevocably and expressly waive all right to a trial by jury in any action, proceeding, or claim arising out of or relating to (i) this Agreement or (ii) the actions or omission of either party in negotiating, performing or enforcing this Agreement.

**26.  COUNTERPARTS.**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  The parties agree that any party may deliver this Agreement by facsimile or other broadly-accepted electronic means.

MASTER DEMO SERVICES AGREEMENT - Signature of Acceptance; Authorized & Agreed by:

MASS CONNECTIONS, INC.                    SHOPPER EVENTS, LLC

_____                   _____
                                          Provider Signature
Caroline Nakken                           _____
President/CEO                             Title: V.P General Mang

April 20, 2009                            Date: 4/23/09

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

        I am employed in the County of Orange, State of California.  I am over the age of 18 and am not a party to the within action; my business address is 18100 Von Karman Avenue, Suite 750, Irvine, California 92612.

        On *September 23, 2013,* I served true and correct copies of the document(s) described as **DEFENDANTS CROSSMARK, INC. AND SHOPPER EVENTS, LLC'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, as indicated on the attached Service/Mailing List, as follows:

        ☒    **(By U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.  I deposited such envelopes with postage thereon fully prepaid to be placed in the United States Mail at Irvine, California as indicated on the attached Service/Mailing List.

        ☐    **(By Electronic Delivery)** I served a true and correct copy by electronic delivery pursuant to C.C.P. § 1010.6, calling for agreement to accept service by electronic delivery, to the interested parties in this action as indicated on the attached Service/Mailing List.

        ☐    **(By Hand Delivery)** I caused such document to be delivered by hand to the offices of the addressees as indicated on the attached Service/Mailing List.

        ☐    **(By Express Service)** I served true and correct copies, enclosed in sealed Federal Express envelopes, for collection and for delivery marked for next day delivery in the ordinary course of business, addressed to the offices of the addressees as indicated on the attached Service/Mailing List.

        ☒    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

        Executed on *September 23, 2013*, at Irvine, California.

                _____

                Terry L. Kuester

<u>**SERVICE/MAILING LIST**</u>

*Social Sampling v. Crossmark, Inc.*
U.S. District Court, Central District of California, Southern Division
Case No. SACV 12-01576 CJC (ANx)
Hon. Cormac J. Carney

Nathaniel L. Dilger, Esq.
Peter R. Afrasiabi, Esq.
ONE LLP
4000 MacArthur Blvd.
West Tower, Suite 1100
Newport Beach, CA 92660
T: 949-502-2870
Email:    ndilger@onellp.com
          pafrasiabi@onellp.com